IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

GARY P. GREENE, AIS # 237553,    :

    Plaintiff,                        :

vs.                              :    CIVIL ACTION 06-0779-CG-M

CORRECTIONAL MEDICAL SERVICES,   :
*et al.*,
                                 :

    Defendants.

<u>REPORT AND RECOMMENDATION</u>

Plaintiff, an Alabama prison inmate proceeding *pro se* and *in forma pauperis*, filed a Complaint under 42 U.S.C. § 1983. This action has been referred to the undersigned for appropriate action pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(4). After careful it is recommended that this action be dismissed with prejudice, prior to service of process, pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and (ii) because Plaintiff's claims are either frivolous or fail to state a claim upon which relief may be granted.

I.   <u>Nature of Proceedings</u>.

    A.   <u>Complaint</u>.   (Doc. 1).

Plaintiff commenced this action by filing a Complaint on or about November 15, 2006, against Correctional Medical Services ("CMS") and Dr. Mark Sonnier. (Doc. 1). Plaintiff alleges that on September 3, 2004, at the Mobile County Metro Jail ("Jail"), he had a follow-up visit with Defendant Sonnier, wherein he complained of failing to heal and of a bump-like infection at the

suture site on his abdomen.  *(Id.* at 4).  Plaintiff told Defendant Sonnier that after his surgery he had been going to the University of South Alabama Medical Clinic ("USA"), where they would press on his abdomen and clip the suture back, and as the swelling went down, his abdomen would heal.  *(Id.).*

Without requesting Plaintiff's medical records or taking x-rays, Defendant Sonnier allegedly tried to pull the suture out, but when it could not be removed with tweezers, Defendant Sonnier used a knife to "dig" around the suture about one and a half inches deep to see where the suture went.  *(Id.* at 5).  Because Defendant Sonnier could not find the end of suture, he ordered Plaintiff draped for surgery.  *(Id.).*  After Plaintiff received a numbing shot in his abdomen, Defendant Sonnier cut Plaintiff's abdomen about three and a half to four inches deep and pulled out a five- to six-inch suture with his tweezers, which he believed was still connected to something deep inside Plaintiff.  *(Id.).*

Being in pain because he could feel Defendant Sonnier pulling, being on the table for two hours, and having three layers of his abdomen cut, Plaintiff told Defendant Sonnier to "wait a minute man."  *(Id.).*  So Defendant Sonnier reached in Plaintiff's abdomen, cut the suture, and removed a five- to six-inch suture.  *(Id.).*  Defendant Sonnier stated that the surgeon at USA left something in Plaintiff.  *(Id.* at 6).

Defendant Sonnier then proceeded to suture each layer and

told Plaintiff to return in two weeks to have the sutures removed. (*Id.* at 6).  About a month later Plaintiff's abdomen was swelling where Defendant Sonnier had cut him.  (*Id.*).  Plaintiff asked Defendant Sonnier what was going on with his abdomen and what the lab said about the suture that was sent to it.  (*Id.*).  Defendant Sonnier said that he would "fix" Plaintiff, but Plaintiff would have to see a surgeon at USA's clinic.  (*Id.*).  The surgeon told Plaintiff that he had an "incision vertical hernia"[1] which needed surgery and that the sutures were to have been permanent.  (*Id.*).

Defendant Sonnier made an appointment with USA for the surgery.  (*Id.*).  Meanwhile, Plaintiff was transferred to the Alabama Department of Corrections ("ADOC") without his medical records.  (*Id.*).  In May, 2006, Plaintiff had surgery to repair his hernia.  (*Id.*).

Plaintiff claims that Defendant Sonnier was negligent, committed malpractice, and failed "to perform [his] profess[ional] duty" when he failed to request Plaintiff's medical records and to take x-rays "before proceed[ing to perform] surgery [in an] unsafe environment" without the proper

---

[1] An incisional hernia is defined as a "hernia occurring through an old abdominal incision."  RICHARD SLOANE, THE SLOANE-DORLAND ANNOTATED MEDICAL-LEGAL DICTIONARY, 342 (1987).  A hernia is "the protrusion of a loop or knuckle of an organ or tissue through an abnormal opening."  *Id.* at 341.

equipment, thereby causing injury to Plaintiff. (*Id.* at 8). Plaintiff seeks a settlement from Defendants Sonnier and CMS. (*Id.* at 10).

    B. <u>First Amendment</u>. (Doc. 17).

    On April 10, 2007, the Court received Plaintiff's "Motion to Amend . . . Complaint," in which Plaintiff seeks to add information to his claims against Defendants Sonnier and CMS. (Doc. 17 at 1). However, no information is offered concerning the actions taken by Defendants Sonnier and CMS. On March 29, 2007, while incarcerated at J. O. Davis Correctional Facility ("J. O. Davis"), he was advised that his hernia surgery was not holding up because mesh was used. (*Id.*). Dr. Peterson told him that he needed surgery again but using a more advanced technique. (*Id.*). For relief, Plaintiff requests $27 million, insurance for life, and felony charges be brought against Defendant Sonnier for practicing without a surgery license. (*Id.*). Furthermore, Plaintiff states that his medical and hospital bills are over $100,000 as a result of Defendant Sonnier's negligence. (*Id.*).

    C. <u>Second Amendment</u>. (Doc. 21).

    Then, on June 11, 2007, the Court received Plaintiff's "Motion to Amend Complaint," in which he seeks to add more information. (Doc. 21). Plaintiff advises that on May 21, 2006, he had the hernia repair surgery recommended by Dr. Peterson in the emergency room at D. W. McMillian Hospital in Brewton,

Alabama ("McMillian Hospital").  (*Id.* at 1).  On May 23, 2007,
Plaintiff was released to Fountain Correctional Center's
("Fountain") medical ward for observation.  (*Id.*).  On May 31,
2007, he was sent for observation to the intensive care unit at
McMillian Hospital, where Plaintiff was diagnosed as having a
MRSA infection[2] and was treated with antibiotics intravenously
for five days.  (*Id.*).

      D.  <u>Third Amendment</u>.  (Doc. 22).

      Next, on June 13, 2007, Plaintiff filed another Motion to
Amend, in which he seeks to add as Defendants, "companies."
(Doc. 22).  However, at the end of the Motion, Plaintiff
identifies these Defendants as Prison Health Services ("PHS"),
Dr. Barnes, USA Hospital, Dr. Hodge, and Mobile County Metro
Jail.  (*Id.* at 5).

      Plaintiff alleges that he was transferred from the Jail to
Kilby Correctional Facility ("Kilby") in December, 2004, without
being given medical records from Defendant CMS.  (*Id.* at 1).
However, Plaintiff did have a copy of his medicals records from
USA.  (*Id.*).  Upon arrival at Kilby Plaintiff told PHS what
occurred at the Jail, and a copy of his USA records was made.
(*Id.*).  A complete physical with blood work and x-rays was done

_____

      [2]Plaintiff referred to this infection as MRS.  The Court
deduces that Plaintiff intended to refer to MRSA, Methicillin-
Resistant Staphylococcus Aureus.  *See Suggs v. United States,* 199
Fed. Appx. 804 at 1 (11th Cir. 2006) (unpublished).

on Plaintiff at Kilby before he was transferred in January, 2005, to J. O. Davis. (*Id.*). No medical records were sent with Plaintiff, but he "was under the same [PHS] staff" at J. O. Davis. (*Id.* at 2). Plaintiff advised them of his situation and they ordered his medical records from December, 2004, to June, 2005.[3] (*Id.*). While at J. O. Davis, surgery was scheduled for him, but Plaintiff was transferred to Mobile Work Release before it could be performed. (*Id.*). Plaintiff was allegedly "denied medical attention" at Mobile Work Release. (*Id.*). Plaintiff completed serving his sentence there in August, 2005. (*Id.*). After his release he returned to Defendant USA with the same problem. (*Id.*).

Plaintiff told Dr. Hodge at USA about his situation. (*Id.*). She took x-rays before she performed the surgery to repair the prior surgeries which were not holding. (*Id.*). Plaintiff states that in May, 2006, she repaired the whole site "okay." (*Id.* at 3).

Plaintiff advises that a doctor at McMillian Hospital told him that he received MRSA during a surgery. (*Id.*). Plaintiff concludes that each Defendant "play[ed] a part in [the] negligence" because the infection has been with him a long time. (*Id.*).

---

[3]The date of June, 2005 is based on handwriting that appears to indicate "6-05," but to fit in the context of Plaintiff's description, the date should be January, 2005. (Doc. 22 at 2).

On September 4, 2006, Plaintiff was incarcerated again at
the Jail. (*Id.* at 3). He told officials that he recently had
surgery which was not healing because "infection was com[ing]
out." (*Id.*). Officials gave him an antibiotic several times for
the infection, but the infection would return after a few days.
(*Id.*). Officials told him that it was his problem and to get it
fixed when he was released. (*Id.*). Plaintiff was transferred to
Kilby, then J. O Davis, and then Mobile Work Release, where he
was sporadically given an antibiotic. (*Id.*). He was examined by
Dr. Peterson, who told Plaintiff that the mesh was infected and
surgery was needed again for the entire site. (*Id.* at 4).
Dr. Peterson performed the surgery on May 20, 2007, giving
Plaintiff new mesh. (*Id.*). Plaintiff was released to the Jail,
but was returned to the intensive care unit after Dr. Peterson
identified the underlying problem. (*Id.*). Plaintiff was given
intravenous antibiotics for five days and then was observed for
two days in a regular room. (*Id.*). Plaintiff was returned to
the hospital ward at Fountain. (*Id.*). Plaintiff complained of
pain and was to report to Dr. Peterson at McMillian Hospital in
two weeks. (*Id.*).

Plaintiff states that he wants to add the Jail because he
was under Defendant CMS's medical care there from September,
2004, to December, 2004, and was in an unsafe environment. (*Id.*
at 4). And Defendant Sonnier prescribed several types of

7

antibiotics for Plaintiff after the surgery for a staph infection. (*Id.* at 5*)*.

    E.   Fourth Amendment.  (Doc 34).

    Again, Plaintiff amended his Complaint by filing Plaintiff's Request to Amend Complaint, in which he relates that Defendant Sonnier performed the September 3, 2004, surgery, which caused his injury and infection. (Doc. 34).  This surgery was allegedly performed in an unsterilized environment and Plaintiff was improperly prepared for surgery, according to an unidentified physician, when he was scrubbed with Betadine. (*Id.* at 1-2). Defendant Sonnier is alleged not to have the knowledge or skills to perform surgery as compared to the first surgeon who performed surgery on Plaintiff for an ulcer and from whom consent to operate was not obtained. (*Id.* at 2-3).

    Plaintiff contends that Defendant Sonnier's surgical performance in a "jail-hospital" environment was deliberate indifference and caused Plaintiff to be diagnosed with a "vertical incision hernia" and MRSA. (*Id.*).  This forced Plaintiff to undergo another surgery and to be placed in the intensive care unit at McMillian Hospital for one week with a staph infection. (*Id.* at 3).  Plaintiff maintains that Defendant Sonnier's actions are evidence of "intentional maltreatment" and "such gross incompeten[ce] and inadequate medical care violates the eighth amendment." (*Id.* at 4).  Furthermore, Plaintiff was

8

not allowed to go to Defendant USA where any post-surgical problems would receive skilled attention due to Defendant Sonnier wanting to take an "easier and less efficacious route in treating [Plaintiff]," thereby "manifest[ing] a deliberate indifference to a serious medical problem." (*Id.*).

      F. <u>Fifth Amendment</u>. (Doc. 36).

In Plaintiff's last Amendment, filed April 28, 2008, he seeks to add Jail employees, Jack Tillman and Warden Mike Haley, and CMS employees, Carla Wasdin and Sylvia Ranki. (Doc. 36. at 1). According to Plaintiff, these Defendants are responsible for monitoring the health and medical conditions of detainees, such as Plaintiff. (*Id.*). And Plaintiff alleges that they "were deliberately indifferent to the serious medical need of Plaintiff and acted negligently and/or wantonly in monitoring deteriorating medical condition during Plaintiff's incarceration as a detainee at the Jail and failed to provide adequate treatment to Plaintiff." (*Id.* at 2). "Plaintiff also alleges claims of negligent and wanton training and supervision, negligence, wanton[n]ess and outrage." (*Id.*).

II. <u>Standards of Review Under 28 U.S.C. § 1915(e)(2)(B)</u>.

Because Plaintiff is proceeding *in forma pauperis*, the Court is reviewing the Complaint (Doc. 1) and the five Amendments to the Complaint (Docs. 17, 21, 22, 34 & 36) under 28 U.S.C. §

1915(e)(2)(B).[4]  Under § 1915(e)(2)(B)(i), a claim may be
dismissed as "frivolous where it lacks an arguable basis in law
or fact."  *Neitzke v. Williams*, 490 U.S. 319, 325, 109 S.Ct.
1827, 1831-32 (1989).  A claim is frivolous as a matter of law
where, *inter alia*, the defendants are immune from suit, *id.* at
327, 109 S.Ct. at 1833, or the claim seeks to enforce a right
that clearly does not exist.  *Id.*  Judges are accorded "not only
the authority to dismiss [as frivolous] a claim based on
indisputably meritless legal theory, but also the unusual power
to pierce the veil of the complaint's factual allegations and
dismiss those claims whose factual contentions are clearly
baseless."  *Id.*  Moreover, a complaint may be dismissed under 28
U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon
which relief may be granted.  *See Mitchell v. Farcass*, 112 F.3d

---

[4]The predecessor to this section is 28 U.S.C. § 1915(d).
Even though Congress made many substantive changes to § 1915(d)
when it enacted 28 U.S.C. § 1915(b)(2)(B), the frivolity and the
failure to state a claim analysis contained in *Neitzke v.
Williams*, 490 U.S. 319, 109 S.Ct. 1827 (1989), was unaltered.
*Bilal v. Driver*, 251 F.3d 1346, 1349 (11th Cir.), *cert. denied*,
534 U.S. 1044 (2001); *Brown v. Bargery*, 207 F.3d 863, 866 n.4
(6th Cir. 2000).  However, dismissal under § 1915(e)(2)(B) is now
mandatory.  *Bilal*, 251 F.3d at 1348-49.
      Furthermore, Plaintiff is allowed to amend his Complaint as
a matter of right under Rule 15(a) because Defendants have not
been served in this action.  *See* Docs. 18, 23, 35.  However, the
Amendments are subject to screening.  *Cf. Halliburton & Assoc. v.
Henderson, Few & Co.*, 774 F.2d 441, 444 (11th Cir. 1985)("If the
complaint as amended is still subject to dismissal, leave to
amend need not be given.").

1483, 1490 (11th Cir. 1997)(noting that § 1915(e)(2)(B)(ii)'s language tracks the language of Fed.R.Civ.P. 12(b)(6)). To avoid dismissal for failure to state a claim upon which relief can be granted, the allegations must show plausibility. *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1966 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Id.* at 1965. That is, the allegations must be a "'plain statement' possess[ing] enough heft to 'sho[w] that the pleader is entitled to relief.'" *Id.* at 1966 (second brackets in original). "[L]abels and conclusions and a formulaic recitation of a cause of action's elements" are insufficient for grounds for entitlement to relief. *Id.* at 1959. Dismissal is also warranted when a successful affirmative defense, such as a statute of limitations, appears on the face of a complaint. *Jones v. Bock*, 549 U.S. 199, 127 S.Ct. 910, 920-21 (2007).

III. <u>Discussion</u>.

In a § 1983 action a plaintiff must establish a causal connection between a defendant's actions, orders, customs, or policies and a deprivation of the plaintiff's constitutional or federal rights in order to state a claim upon which relief may be granted. *Zatler v. Wainwright*, 802 F.2d 397, 401 (11th Cir. 1986); *Williams v. Bennett,* 689 F.2d 1370, 1380 (11th Cir.), *cert. denied*, 464 U.S. 932 (1983). In the present action, Plaintiff did not connect many of his allegations to a defendant.

Thus, the Court will address only those claims that it finds are connected to a defendant. *See GJR Investments, Inc. v. County of Escambia County, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998) (ruling that it is not the court's duty to rewrite a deficient complaint or to act as the non-movant's *de facto* attorney). Nonetheless, "[p]ro *se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." *Tannenbaum v. United States,* 148 F.3d 1262, 1263 (11th Cir. 1998).  In screening the Complaint and its Amendments, the Court "view[s] allegations in the complaint [and amendments] as true" for the purpose of determining if Plaintiff failed to state a claim upon which relief can be granted. *Mitchell,* 112 F.3d at 1491.

    A.  <u>Claims Against Defendant Sonnier and the Statute of Limitations</u>.

    The claims against Defendant Sonnier arise from the surgical procedure that he performed on Plaintiff on September 3, 2004, his examination of Plaintiff a month later and sending Plaintiff to a surgeon at Defendant USA, then scheduling an appointment for surgery (Doc. 1), and giving Plaintiff antibiotics for a staph infection (Doc. 22 at 5).  Plaintiff has identified these claims as being based on negligence.  (Doc. 1; *see* Docs. 17 & 22.)

    In a § 1983 action the statute of limitations is borrowed from a state's statute of limitations for personal injury actions because a § 1983 action is described as a constitutional tort

action.  *Wallace v. Kato,* 127 S.Ct. 1091, 1094 (2007).  In
Alabama the statute of limitations for a § 1983 action is two
years.  *Lufkin v. McCallum,* 956 F.2d 1104, 1106, 1108 (11th
Cir.), *cert. denied,* 506 U.S. 917 (1992); ALA. CODE § 6-2-38(l).
Even though state law determines the length of the limitations
period, federal law governs when the statute of limitations
begins to run, which is when the cause of action accrues.
*Wallace,* 127 S.Ct. at 1095.  Under federal law, "'[accrual
occurs] when the plaintiff has 'a complete and present cause of
action'' . . . that is, 'when plaintiff can file suit and obtain
relief.'"  *Id.* (brackets in original)(citations omitted).

     In the present action, the Complaint reflects that Plaintiff
knew of his claims against Defendant Sonnier immediately after
the surgery was performed on September 3, 2004, and then when he
subsequently went to have Defendant Sonnier examine the area of
the wound on October 3, 2004, which Plaintiff describes as being
a month later than the surgery.  (Doc. 1).  According to the
allegations, Plaintiff's claim was complete after Defendant
Sonnier performed the surgical procedure or at the very latest
when he went to Defendant Sonnier for an examination of an
infection at the surgical site.

     The other allegations directed to Defendant Sonnier are
for referring him to a surgeon, for making a surgical
appointment, and for giving him an antibiotic for infection.

(Doc. 1; Doc. 22 at 5).   These actions did no harm to Plaintiff and, therefore, do not reflect a violation of a constitutional right.   That is, in order to state a medical claim under § 1983 "a  prisoner must allege acts or omissions sufficiently harmful to evidence a deliberate indifference to serious medical needs." *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 292 (1976). Therefore, these allegations do not state a claim upon which relief may be granted.   *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1913 (1981) (in order to state a claim under § 1983 "the conduct complained of [must have] deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States."), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327, 330-31 (1986).

In the subsequent Amendment filed on April 16, 2008, Plaintiff merely describes in further detail the circumstances surrounding the surgery mentioned in the original Complaint, e.g., unsterilized conditions, Defendant Sonnier's lack of surgical skills, etc., and states that Defendant Sonnier's surgery caused his injury and infection.   (Doc. 34 at 1-3). Additionally, the other Amendments' allegations concerning later surgeries do not reflect any further actions taken by Defendant Sonnier.  *See Zatler*, 802 F.2d at 401 (in order to state a § 1983 claim a plaintiff must causally connect a defendant's actions, omissions, customs, or policies to a deprivation of the

plaintiff's constitutional or federal rights).  They merely describe damages that allegedly flowed from Defendant Sonnier's surgery, i.e., additional surgery was needed to correct a prior unsuccessful surgery, a condition that came about after surgery, or an infection at the surgical site.  *See Kato,* 127 S.Ct. at 1097 ("The cause of action accrues even though the full extent of the injury is not then known or predictable.") (citation and quotation marks omitted); *see also Barts v. Joyner,* 865 F.2d 1187, 1195 (11th Cir. 1989) (holding that defendants are liable only for damages suffered by plaintiff during the three-hour detention before she confessed and any damages that directly flowed from the detention, but not for damages from plaintiff's subsequent criminal trial, conviction, incarceration, and exacerbation of her Rape Trauma Syndrome because intervening actors, e.g., the prosecutor, severed the chain of causation), *cert. denied,* 493 U.S. 831 (1989).

In regard to the claims lodged against Defendant Sonnier based on his surgery and examination for infection, § 1983's statute of limitations bars them from proceeding.  Plaintiff's original Complaint was received by the Court on or about November 15, 2006.  (Doc. 1).  The Complaint and Motion to Proceed Without Prepayment of Fees indicate that they were signed by Plaintiff on November 5, 2006.  (Doc. 1).  And the Motion's certificate reflects that it executed by a jail official on November 9, 2006.

(Doc. 2).  However, the postmark on the these pleadings' envelope is unable to be read.  (Doc. 1).   Thus, the date of filing appears to be between November 9, 2004, and November 15, 2004.  *See  Houston v. Lack*, 487 U.S. 266, 270, 108 S.Ct. 2379, 2382 (1988) (delivery to prison officials of a prisoner's notice of appeal for mailing to the court constitutes filing); *Garvey v. Vaughn,* 993 F.2d 776, 783 (11th Cir. 1993) (applying *Houston v. Lack* to a prisoner's filing of a § 1983 action).

In this instance the exact date of filing does not need to be determined because any date from November 5, 2006, to November 15, 2006 is beyond two years from when the claims against Defendant Sonnier accrued.  That is, Plaintiff's surgery was performed on September 3, 2004, and on October 3, 2004, Plaintiff went to Defendant Sonnier for an examination of infection at the surgical site.  Accordingly, Plaintiff's claims against Defendant Sonnier are barred by the two-year statute of limitations.  For this reason, Plaintiff's claims against Defendant Sonnier based on the surgery and examination are due to be dismissed as frivolous.  *Clark v. Georgia Pardons & Paroles Bd.,* 915 F.2d 636, 640 n.2 (11th Cir. 1990) (when an affirmative defense, such as the statute of limitations, would defeat a claim, the claim may be dismissed as frivolous); *cf. Bock,* 127 S.Ct. at 920-21 (when a successful affirmative defense, such as a statute of limitations, appears on the face of a complaint, a complaint is subject to

16

dismissal under 28 U.S.C. § 1915(e)(2)(B) for failure to state a claim).

B.   Claims Against CMS.

The original Complaint does not contain a reference to CMS except to name it as a Defendant.  (Doc. 1).  In the June 13, 2007, Amendment (Doc. 22), Plaintiff alleges that he was under Defendant CMS's medical care from September, 2004, to December, 2004, and that he was transferred to Kilby without being given medical records by Defendant CMS.  (*Id.*).  In order to state a claim upon which relief may be granted against Defendant CMS, Plaintiff must allege that a policy or custom of Defendant CMS was responsible for a deprivation of his constitutional rights. *Ort v. Pinchback,* 786 F.2d 1105, 1107 (11th Cir. 1986); *accord Buckner v. Toro,* 116 F.3d 450, 452-53 (11th Cir.) (finding that § 1983's municipality law, as announced in the *Monell* decision, is to be applied to a corporate medical provider), *cert. denied,* 522 U.S. 1018 (1997).

The United States Supreme Court in *Monell v. Department of Social Services of the City of New York,* 436 U.S. 658, 691, 98 S.Ct. 2018, 2036 (1978), ruled that a county or a city cannot have liability imposed against them based on the acts of their employees.  That is, a municipality cannot be held vicariously liable under the theory of *respondeat superior* simply because it employs a tortfeasor.  *Id.*  A local governmental entity may only

be held liable if the execution of a government policy or custom is the moving force that caused the constitutional violation. *Id.* at 694, 98 S.Ct. at 2037-38.  However, "the inquiry into a governmental entity's custom or policy is relevant only when a constitutional deprivation has occurred." *Rooney v. Watson*, 101 F.3d 1378, 1381 (11th Cir.), *cert. denied*, *Rooney, Rooney v. Watson*, 522 U.S. 966 (1997); *see City of Los Angeles v. Heller*, 475 U.S. 796, 798, 106 S.Ct. 1571, 1573 (1986).

In the present action, Defendant CMS is not mentioned in the original Complaint except to be named as a Defendant. (Doc. 1). No custom or policy was identified by Plaintiff, and the allegations do not show that either a custom or policy was involved in the alleged deprivation.  Instead, it appears that Plaintiff wants to impose liability on Defendant CMS based on the acts of its employee, Defendant Sonnier.  Accordingly, Plaintiff has failed to state a claim upon which relief can be granted against Defendant CMS in the original Complaint. *Id.* at 691, 98 S.Ct. at 2036.  Moreover, the numerous subsequent Amendments do not cure this deficiency as no policy or custom of Defendant CMS was identified.

C.   <u>Claims Against PHS</u>.

In the Amendments following the original Complaint, Plaintiff named as Defendants, PHS, Dr. Barnes, USA Hospital, the Mobile County Metro Jail, Dr. Hodge (Doc. 22 at 5), Jack Tillman,

Warden Mike Haley, Carla Wasdin, and Sylvia Ranki (Doc. 36 at 9).
Plaintiff encountered PHS employees when he arrived at Kilby from
Defendant Jail.  He complained to them that Defendant CMS had not
sent his medical records from Defendant Jail, but he had his
records from Defendant USA, which they copied.  (*Id.* at 1).  He
was transferred to J. O. Davis without records from Defendant PHS
at Kilby so Defendant PHS at J. O. Davis ordered his records.
(*Id.* at 2).  Defendant PHS at J. O. Davis scheduled an
appointment for surgery for Plaintiff, but it was never
performed.  (*Id.*).

Defendant PHS appears to be the corporate medical provider
for ADOC.  Like Defendant CMS, it can only be held liable if its
policy or custom caused a constitutional deprivation.  *Monell,*
436 U.S. at 694, 98 S.Ct. at 2037-38.  Liability cannot be based
on the acts of employees.  *Id.*  Plaintiff, however, has not
described a policy or custom of Defendant PHS that caused him to
suffer a constitutional deprivation.  Therefore, the Court finds
that Plaintiff has failed to state a claim against Defendant PHS.

D.  Claims Against Dr. Barnes.

Named as a Defendant is PHS employee, Dr. Barnes.  (*Id.* at
5).  Plaintiff only mentions Defendant Barnes in the listing of
additional Defendants.  (*Id.*).  There are no allegations
connected to his name, nor are there allegations from which the
Court could infer a claim against Defendant Barnes.  Thus,

Plaintiff has failed to state a claim upon which relief can be granted against Defendant Barnes.  *Zatler,* 802 F.2d at 401 (there must be causal connection between the defendant's actions and a deprivation of plaintiff's constitutional rights); *Estelle,* 429 U.S. at 106, 97 S.Ct. at 292 ("In order to state a cognizable [medical] claim, a prisoner must allege acts or omissions sufficiently harmful to evidence a deliberate indifference to serious medical needs.").

    E.  <u>Claims Against USA Hospital</u>.

    USA Hospital was listed as a Defendant as well.  (Doc. 22 at 5).  In the Amendment where Defendant USA is identified, Plaintiff mentions in a positive light that Defendant USA gave him his medical records (*Id.* at 1) and he states that at Defendant USA, Defendant Hodge performed surgery on him after his release at the end of his sentence (*Id.* at 2-3).  No reference is made in the Complaint or other Amendments to a policy or custom of Defendant USA that caused Plaintiff to suffer a constitutional deprivation.  Therefore, Plaintiff has failed to state a claim upon which relief can be granted.  *See Monell,* 436 U.S. at 691, 98 S.Ct. at 2036; *Zatler,* 802 F.2d at 401.

    F.  <u>Claims Against Dr. Hodge</u>.

    An employee of Defendant USA, Dr. Hodge, is also identified as a Defendant.  (*Id.* at 5).  The allegations against Defendant Hodge are:

> I brough it to Dr. Hodge attention about the
> situation and she Dr. Hodge said that she
> would have to see my medical record to tell
> me why even doo [last word unreadable] she
> took x-rays before she did surgery again & I
> know the x-ray - showed where I had been cut
> and half or my stitches had been take out and
> the other part come alose because she did the
> repair of the surgery and she repair the hold
> thing OK. [sic]

(*Id.* at 2-3).  These allegations do not reflect a violation of a constitutional right.  Rather, they show that Plaintiff was pleased with the medical treatment that he received from Defendant Hodge.  Accordingly, this claim against Defendant Hodge is frivolous.

G.  <u>Claims Against Jail</u>.

The last Defendant to be named in this Amendment is Mobile County Metro Jail.  (*Id.* at 5).  Plaintiff maintains that he wants to add this Defendant "[b]ecause [he] was house[d] there as a[n] inmate in a[n] unsafe enviro[n]ment so they play[ed] a part in negligence because they contract[ed] C.M.S. for their medical facil[i]ty purpose...[.]"  (*Id.* at 5).

However, in order to bring a viable § 1983 action, the defendant sued must be an entity that is subject to being sued. *Dean v. Barber,* 951 F.2d 1210, 1214 (11th Cir. 1992).  The capacity of a party to be sued is "determined by the law of the state in which the district court is held. . . ."  FED.R.CIV.P. 17(b); *see Dean,* 951 F.2d at 1214.

Under Alabama law, the sheriff, or a jailer who is appointed

by the sheriff, "has the legal custody and charge of the jail in his county and all prisoners committed thereto. . . ." ALA. CODE § 14-6-1 (1995).  Generally, a sheriff's department operates a county jail.  However, an Alabama sheriff's department lacks the capacity to be sued.  *Dean,* 951 F.2d at 1214; *King v. Colbert,* 620 So.2d 623, 626 (Ala. 1993); *White v. Birchfield,* 582 So.2d 1085, 1087 (Ala. 1991).  Then, it follows that a subdivision of a sheriff's department, i.e., the Jail, likewise lacks the capacity to be sued.  *See Marsden v. Federal Bureau of Prisons,* 856 F. Supp. 832, 836 (S.D.N.Y. 1994); *see also House v. Cook County Dept. of Corrections,* No. 98 C 788, 1998 WL 89095, at *2(N.D. Ill. Feb. 13, 1998); *May v. North County Detention Facility,* No. C 93-1180 BAC, 1993 WL 300290, at *2 (N.D. Cal. July 21, 1993). Accordingly, the Court determines that Defendant Jail is not a suable entity and, therefore, it is recommended that the claims against Defendant Jail be dismissed as frivolous.

    H.   <u>Claims Against Jack Tillman, Warden Mike Haley,</u>
       <u>Carla Wasdin, and Sylvia Ranki</u>.

    In his final Amendment Plaintiff adds as Defendants Jack Tillman, Warden Mike Haley, Carla Wasdin, and Sylvia Ranki. (Doc. 36 at 1).  Plaintiff's claims against these Defendants are pled in vague and conclusory terms, thereby violating Rule 8(a) of the Federal Rules of Civil Procedure and depriving the Court and a Defendant of fair notice of the exact nature of the claims

against him or her.[5]  For example, "these defendants" violated the
constitutional requirement "to provide needed medical attention
to a person who is involuntarily in state custody and cannot
otherwise obtain such care, and who cause physical harm to such a
person by deliberate indifference." (*Id.* at 1).  Then, Plaintiff
alleges that CMS employees will be referred to "collectively."
(*Id.* at 1).  After that he proceeds to aver that "defendants were
deliberately indifferent to the serious medical need of
Plaintiff," "acted negligently and/or wantonly in monitoring
[his] deteriorating medical condition," and "failed to provide
adequate treatment." (*Id.* at 1-2).  In addition he states that
Defendants were "negligent and wanton training and supervision

---

[5]Rule 8(a) of the Federal Rules of Civil Procedure provides:

> (a) Claim for Relief.  A pleading that states
> a claim for relief must contain:
>
>> (1) a short and plain
>> statement of the grounds
>> for the court's
>> jurisdiction, . . . .
>>
>> (2) a short and plain
>> statement of the claim
>> showing that the pleader
>> is entitled to relief;
>> and
>>
>> (3) a demand for the
>> relief sought, which may
>> include relief in the
>> alternative or different
>> types of relief.

negligence, wanton[n]ess and outrage." (*Id.* at 2).

After Plaintiff lists each of the four Defendants by name, he does not mention their names again. He refers to them as "Defendants" and connects them to vague terms to form legal conclusions. No facts are provided to define the parameters of his claims. Consequently, his claims can rest on a variety of facts. *See, e.g., Peterson v. Atlanta Housing Auth.,* 998 F.2d 904, 912 (11th Cir. 1993) ("Terms like 'due process' are inherently vague and such claims may rest on a virtually infinite number of factual scenarios."). "'It is not enough, to indicate merely that the plaintiff has a grievance but sufficient detail must be given so that the defendant, and the Court, can obtain a fair idea of the what the plaintiff is complaining, and can see that there is some legal basis for recovery.'" *L.S.T., Inc. v. Crow,* 49 F.3d 679, 684 (11th Cir. 1995). A plaintiff is required to provide in his complaint "' a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 168, 113 S.Ct. 1160, 1163 (1993). Otherwise, vague and conclusory claims are due to be dismissed for failure to state a claim upon which relief can be granted. *Fullman v. Graddick,* 739 F.2d 553, 556-57 (11th Cir. 1984).

24

Based on Plaintiff's pleading of this Amendment, Defendants Tillman, Haley, Wasdin, and Ranki are deprived of notice of the claim against him or her, and a causal connection has not been shown between each Defendant and deprivation of Plaintiff's constitutional rights.[6]  Accordingly, Plaintiff has failed to state a claim against these Defendants. *Zatler,* 802 F.2d at 401; *Fullman,* 739 F.2d at 556-57.

IV.  <u>Conclusion</u>.

Based upon the foregoing reasons, it is recommended that this action be dismissed with prejudice, prior to service of process, pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and (ii) because Plaintiff's claims are either frivolous or fail to state a claim upon which relief may be granted.

Plaintiff is advised that if he wishes to bring anything before the Court for consideration, particularly in regard to the statute of limitations, he should do so now during the objection period.

MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS
AND RESPONSIBILITIES FOLLOWING RECOMMENDATION
<u>AND FINDINGS CONCERNING NEED FOR TRANSCRIPT</u>

1.  **<u>Objection</u>**.  Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the clerk of

---

[6]The Court observes that Plaintiff began this action by filing a Complaint claiming Defendants Sonnier and CMS were negligent.  (Docs. 1, 17 & 22).  Now, in his last two Amendments (Docs. 34 & 36), he makes the allegation of "deliberate indifference to serious medical needs."

court.  Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge.  *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*).  The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.  **Transcript (applicable where proceedings tape recorded)**.  Pursuant to 28 U.S.C. § 1915 and Fed.R.Civ.P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

DONE this 18th day of June, 2008.

s/BERT W. MILLING, JR.
UNITED STATES MAGISTRATE JUDGE

26